## No. 25978

## The People of the State of Colorado v. Ronald E. Duran
(533 P.2d 1116)

Decided April 14, 1975.

208

John P. Moore, Attorney General, John E. Bush, Deputy, Robert C. Lehnert, Assistant, for plaintiff-appellee.

Rollie R. Rogers, State Public Defender, James F. Dumas, Jr., Chief Deputy, Mary G. Allen, Deputy, Kenneth J. Russell, Deputy, Carol L. Gerstl, Deputy, for defendant-appellant.

*En Banc.*

MR. JUSTICE ERICKSON delivered the opinion of the Court.

Ronald E. Duran, the defendant herein, was convicted by a jury of aggravated robbery (1971 Perm. Supp., C.R.S. 1963, 40-4-302)[1] and conspiracy to commit aggravated robbery (1971 Perm. Supp., C.R.S. 1963, 40-2-201).[2] Two issues have been raised on appeal. The defendant first asserts that the Colorado statute relating to aggravated robbery is unconstitutional. As a second basis for his appeal, he asks appellate review of the sentence which the trial judge imposed. We affirm.

After the jury returned its verdict, the trial judge remanded the defendant to the county jail pending the completion of a presentence investigation. *See* Crim. P. 32; section 16-11-102, C.R.S. 1973. The defendant, at the time the robbery was committed, had been released on parole for only one month from the penitentiary. Defense counsel filed a motion for a new trial and was provided with a copy of the presentence investigation.

The presentence investigation reflects the defendant's history and his participation in numerous crimes of violence. He declined to make any statement regarding his background, other than to say that his lawyer would file a motion for a new trial and appeal his conviction and that he would not serve any sentence that the court imposed.

The trial court heard and denied the defendant's motion for a new trial. Thereafter, the trial judge granted the defendant and his counsel the right of allocution. The defendant elected to remain

---

[1]Now section 18-4-302, C.R.S. 1973.
[2]Now section 18-2-201, C.R.S. 1973.

silent and left the presentation of mitigating circumstances to defense counsel. Defense counsel thoroughly investigated the presentence report and acknowledged at the sentencing hearing that the report was accurate in all material parts. In attempting to assist the defendant, defense counsel acknowledged that the defendant had not benefitted from his previous incarceration in various penal institutions and that the defendant had a serious narcotics problem which the court should consider in attempting to achieve rehabilitation.

The investigation by defense counsel ascertained that the treatment which the defendant received when confined in the California Rehabilitation Center for treatment of narcotics problems was not of any great value. Therefore, defense counsel suggested that the court consider a more positive narcotics rehabilitation program in imposing sentence upon the defendant. The probation report reflects that the defendant is not a narcotics addict, but has used narcotics from time to time. The trial judge had the benefit of a complete presentence investigation which reflects that the defendant was in excellent health and suffering from no physical disability.

After considering the remarks of defense counsel and weighing the material contained in the presentence investigation and the evidence presented at the time of trial, the trial judge sentenced the defendant to not less than 34-1/2 years nor more than 39-1/2 years for robbery and imposed the same sentence for conspiracy, with the sentences to be served concurrently.

## I.

### Basis for the Charge

The criminal episode which brought the defendant before the court on this occasion involved the robbery of the Gaylord Drug Store. The evidence irrefutably points to the fact that an aggravated robbery was committed by the defendant and William Shearer. Shearer was a convicted murderer who was serving a life sentence at the time he escaped from the Colorado State Penitentiary and teamed up with the defendant to commit two robberies to obtain money and drugs.

The defendant and Shearer were driven to the Gaylord Drug Store by Cindy Pena, the common-law wife of the defendant's brother. When they arrived at the drug store, the defendant en-

tered, bought some cigarettes to determine who was present, and departed. Thereafter, he and Shearer entered the drug store, threatened the owner and his wife with pistols, and obtained both money and narcotic drugs. The defendant and Shearer were arrested after Cindy Pena, who had driven the get-away car, went to the police. Cindy Pena reported the defendant to the police because he struck and abused one of her children.

Cindy Pena was the key prosecution witness. She was threatened before she testified and only testified after she was granted transactional immunity. She tied the defendant to both the robbery and the conspiracy which was entered into to rob both the Gaylord Drug Store and another drug store. At the close of the prosecution's case, the defense rested.

## II.
## Constitutionality of the Aggravated Robbery Statute

In *People v. Small,* 177 Colo. 118, 493 P.2d 15 (1972), we upheld the constitutionality of the Colorado aggravated robbery statute. After reviewing the arguments urged by the defendant relating to the substantive elements of the crimes of aggravated and simple robbery, we again sustain the constitutionality of the statute.

## III.
## Appellate Review of the Sentences

In this case, we are called upon to set forth criteria for the appellate review of sentences. Our power to review a sentence is contained in 1971 Perm. Supp., C.R.S. 1963, 40-1-509(1), (2),[3] which provides:

"18-1-409. *Appellate review of sentence for a felony.* (1) When sentence is imposed upon any person following a conviction of any felony, other than a class 1 felony in which the penalty was decided upon by a verdict of the jury, the person convicted shall have the right to one appellate review of the propriety of the sentence, having regard to the nature of the offense, the character of the offender, and the public interest, and the manner in which the sentence was imposed, including the sufficiency and accuracy of the information on which it was based. The procedures to be

---

[3]Now section 18-1-409, C.R.S. 1973.

employed in the review shall be as provided by supreme court rule.

"(2) No appellate court shall review any sentence which was imposed within the minimum and maximum punishment authorized for the offense involved if the minimum sentence imposed is not more than three years greater than the minimum sentence provided for the offense, and unless within thirty days after sentence is imposed a written notice is filed in the trial court to the effect that review of the sentence will be sought and said notice must state the grounds upon which it is based."

The *ABA Standards Relating to Appellate Review of Sentences* provide guidance to us in the effectuation of the purposes and goals of sentence review:

"1.2 Purposes of review.

"The general objectives of sentence review are:

"(i) to correct the sentence which is excessive in length, having regard to the nature of the offense, the character of the offender, and the protection of the public interest;

"(ii) to facilitate the rehabilitation of the offender by affording him an opportunity to assert grievances he may have regarding his sentence;

"(iii) to promote respect for law by correcting abuses of the sentencing power and by increasing the fairness of the sentencing process; and

"(iv) to promote the development and application of criteria for sentencing which are both rational and just."

*See State v. Chaney*, 477 P.2d 441 (Alaska 1970); *Frankel, Criminal Sentences: Law Without Order* (1973); Mueller, *Penology on Appeal: Appellate Review of Legal but Excessive Sentences*, 15 Vand. L. Rev. 671 (1962). *See also* Note, *Appellate Review of Sentencing Procedure*, 74 Yale L.J. 355 (1964); Note, *Appellate Review of Primary Sentencing Decisions: A Connecticut Case Study*, 69 Yale L.J. 1453 (1969); Mattina, *Sentencing: A Judge's Inherent Responsibility*, 51 Judicature 105 (October 1973).

■ Sentencing is by its very nature a discretionary decision and is an art, not a science. *Hogarth, Sentencing as a Human Process* (Univ. of Toronto Press 1971).

■ The sentence imposed does not only concern the defen-

dant, but is also of paramount importance to society, the corrections authority, and law enforcement. A sentence that is too long, or improperly conceived, tends to reenforce the criminal tendencies of a convicted defendant. On the other hand, a sentence which is too short deprives the law of its effectiveness and may release a dangerous defendant too soon.

 Rehabilitation is the best method for preventing crime. However, when rehabilitation fails, the sentence must serve as a deterrent to others and a means of protecting society. In short, the trial judge must balance a number of factors to determine what deprivation of liberty a particular fact situation requires. When an extended sentence, or a sentence of long duration, is imposed, there must be a clear justification, based upon fact, for the trial judge's action. The trial judge must balance the many facets which enter into a sentencing decision to achieve a result which protects the rights of society and the defendant. The sentencing decision requires that each factor before the court be weighed, without maximizing the value of any one facet of the case.

 In reviewing the record, we cannot modify the sentence imposed by the trial court unless it appears that the trial judge clearly abused his discretion in imposing the sanction in question. *See People v. Campbell,* 188 Colo. 79, 532 P.2d 945; *People v. Euresti,* 187 Colo. 266, 529 P.2d 1319 (1975); *People v. Weihs,* 187 Colo. 124, 529 P.2d 317 (1974); *People v. Carter,* 186 Colo. 391, 527 P.2d 875 (1974); *ABA Standards Relating to Appellate Review of Sentences* § 3.1.

 In our view, the appellate court is always at a disadvantage because of the fact that it does not have the benefit of the trial court's contact with the defendant, which is material and relevant in every case. In this case, the record includes a full transcript of the trial, the findings of the trial judge, all pleadings, and the complete presentence investigation. *See Embry v. State,* 46 Wis.2d 151, 174 N.W.2d 521 (1970). Every sentence should be reviewed with an eye to the nature of the offense, the character of the offender, protection of society, rehabilitation of the defendant, and the development of respect for law and deterrence of crime. *McCleary v. State,* 49 Wis.2d 263, 182 N.W.2d 512 (1971).

 In making a decision as to the proper sentence, the

trial judge faces an onerous decision which must be supported by factual information. The presentence report is not confined to admissible evidence or the crime which was committed. In *United States v. Majors,* 490 F.2d 1321 (10th Cir. 1974), the court said:

"In the exercise of the difficult discretionary function of imposing sentence upon a convicted or confessed criminal, the sentencing judge is entitled to all the help he can get. In fixing punishment, matters and things other than a defendant's guilt of the particular crime are to be considered. Appropriate, perhaps necessary, to the inquiry are the history, background, character and criminal activities of the defendant. Both aggravating and mitigating circumstances are relevant. Pertinent information is not generally to be disregarded because of exclusionary rules of evidence. Williams v. New York, 337 U.S. 241, 69 S.Ct. 1079, 93 L.Ed. 1337, reh. den. 337 U.S. 961, 69 S.Ct. 1529, 93 L.Ed. 1760, reh. den. 338 U.S. 841, 70 S.Ct. 34, 94 L.Ed. 514; Williams v. Oklahoma, 358 U.S. 576, 79 S.Ct. 421, 3 L.Ed.2d 516; reh. den. 359 U.S. 956, 79 S.Ct. 737, 3 L.Ed.2d 763; Hoover v. United States, 10th Cir. 1959, 268 F.2d 787, Wagstaff v. United States, 10th Cir. 1966, 370 F.2d 444; United States v. Donohoe, 10th Cir. 1972, 458 F.2d 237, cert. den. 409 U.S. 865, 93 S.Ct. 157, 34 L.Ed.2d 113."

*But see United States v. Tucker,* 404 U.S. 443, 92 S.Ct. 589, 30 L.Ed.2d 592 (1972), and *United States v. Weston,* 448 F.2d 626 (9th Cir. 1971), where resentencing was required when a sentence was founded at least in part upon misinformation of constitutional magnitude. In *Tucker,* the sentencing judge considered a previous conviction that had been obtained without affording the defendant the right to counsel.

In the instant case, we perceive neither legal nor factual errors which would show that an excessive sentence was imposed by the trial judge. The sentence clearly fell within the permissible range delineated by the legislature for class 3 felonies, such as aggravated robbery. *See ABA Standards Relating to Appellate Review of Sentences* § 3.2; *United States v. Picard,* 464 F.2d 215 (1st Cir. 1972); *United States v. Donohoe,* 458 F.2d 237 (10th Cir. 1972); *Williams v. United States,* 402 F.2d 47 (10th Cir. 1967). A class 3 felony may be punished by a minimum sentence of five

years and a maximum of forty. 1971 Perm. Supp., C.R.S. 1963, 40-1-105.[4] *See Herrmann v. District Court,* 186 Colo. 350, 527 P.2d 1168 (1974); *Harris v. People,* 174 Colo. 483, 484 P.2d 1223 (1971); *Rochon v. People,* 134 Colo. 448, 306 P.2d 1080 (1957); *Walker v. People,* 126 Colo. 135, 248 P.2d 287 (1952); *People ex rel. Best v. District Court,* 115 Colo. 240, 171 P.2d 774 (1946).

In the absence of a clear showing that a sentence is excessive, we should not modify the trial court's judgment. No abuse occurred in this case, as the facts which are in the record provide a foundation for the sentence.

Duran, at the age of ten, commenced his criminal career with the crime of larceny from the person and followed that crime with burglary, malicious mischief, auto theft, assault, and attempted robbery by the age of fourteen. Probation, and other attempts at rehabilitation while Duran was a juvenile, did not assist or benefit him in any way. When he became an adult, he compiled a long record of convictions. In 1965, he was convicted of larceny and was sentenced to the penitentiary and paroled in April 1967. Less than three months later, in June of 1967, he was arrested for aggravated robbery. He was subsequently convicted and paroled in mid-1969. Duran was arrested for assault with a deadly weapon on a police officer on November 26, 1969, convicted, sentenced, and again paroled on July 29, 1972. He committed the crimes in issue less than a month after he was released on parole. He was 27 years old at that time and is a serious threat to society. The sentence, in our view, was based at least in part upon the dangerous propensities of the defendant and with an eye to the protection of society. The offense committed involved violence and reflected recidivist tendencies which could not be ignored by the sentencing court.

Duran was convicted pursuant to the terms of a constitutional statute and has not met the burden of demonstrating that the trial judge imposed an excessive sentence. Therefore, the sentence shall remain unchanged and undisturbed by this court, and the judgment, sentence, and conviction are affirmed.

---

[4] Now section 18-1-105, C.R.S. 1973.